*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellant

**v.**

### Danny L. McPHERSON, Staff Sergeant
United States Army, Appellee

**No. 21-0042**
Crim. App. No. 20180214

Argued April 21, 2021—Decided August 3, 2021

Military Judges: Andrew J. Glass and James Ewing

For Appellant: *Lieutenant Colonel Wayne H. Williams* (argued); *Colonel Steven P. Haight* (on brief); *Captain Thomas J. Darmofal*.

For Appellee: *Captain Alexander N. Hess* (argued); *Colonel Michael C. Friess, Lieutenant Colonel Angela D. Swilley, Captain Joseph A. Seaton Jr.,* and *Captain Paul T. Shirk* (on brief).

Judge MAGGS delivered the opinion of the Court, in which Judge HARDY and Senior Judge STUCKY joined. Chief Judge OHLSON filed a dissenting opinion, in which Judge SPARKS joined.

————————

Judge MAGGS delivered the opinion of the Court.

This case involves a statute of limitations that has expired according to the plain meaning of its text. Following this plain meaning, the United States Army Court of Criminal Appeals (ACCA) dismissed a charge and six specifications of which a court-martial had found Appellee guilty. *United States v. McPherson*, No. ARMY 20180214, 2020 CCA LEXIS 350, at *41, 2020 WL 5798492, at *15 (A. Ct. Crim. App. Sept. 28, 2020) (unpublished). The Government argues that we should reverse the ACCA because its decision goes against Congress's apparent intentions in enacting the statute of limitations at issue and because the decision works an undesirable result. To accept the Government's argument, we would have to "find justification for wrenching from the words of a statute a meaning which literally they [do] not bear in order to escape

consequences thought to be absurd or to entail great hardship." *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930). This we cannot do. "Laws enacted with good intention," as the Supreme Court repeatedly has recognized, "when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable." *Id.*; *see also* G*riffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (quoting this statement). But absent exceptional circumstances, which we conclude are not present here, "the remedy [for such laws] lies with the lawmaking authority, and not with the courts." *Crooks,* 282 U.S. at 60. Accordingly, we reject the Government's request that we disregard the plain meaning of the applicable statute of limitations. We therefore affirm the judgment of the ACCA.

## I. Introduction

A military judge sitting as a general court-martial found Appellee guilty, contrary to his pleas, of six specifications of indecent acts with a child, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 134 (2000); two specifications of aggravated sexual contact with a child, in violation of Article 120(g), UCMJ, 10 U.S.C. § 120(g) (Supp. II 2008); and one specification of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 128 (2012). The military judge sentenced Appellee to confinement for twenty-eight years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

On appeal, the ACCA held that the five-year period of limitations specified in the 2016 amendments to Article 43(b)(1), UCMJ, 10 U.S.C. § 843(b)(1), applied to the six specifications of indecent acts with a child alleged in Charge I. *McPherson*, 2020 CCA LEXIS 350, at *3, 2020 WL 5798492, at *1. Because the offenses described in these specifications occurred in 2004 and the summary court-martial convening authority (SCMCA) did not receive the charges until 2017, the ACCA concluded that the five-year period of limitations had expired. *Id.,* 2020 WL 5798492, at *1. The ACCA therefore set aside the findings with respect to, and dismissed, Charge I and its six specifications. *Id.* at *41–42, 2020 WL 5798492, at *15. The ACCA reassessed Appellee's sentence, reducing it to fifteen years of confinement, reduction to the grade of E–1, and

a dishonorable discharge. *Id.*, 2020 WL 5798492, at \*15. The Judge Advocate General of the Army then certified to this Court the following issue: "Did the United States Army Court of Criminal Appeals err when it dismissed the Specifications in Charge I on the grounds that the statute of limitations had expired?" Our answer is no.

## II. Background

Charge I and its six specifications alleged that Appellee committed indecent acts on the body of his daughter on divers occasions, with some of the acts occurring between May 2004 and August 2004 and others occurring between August 2004 and December 2004. At the time, his daughter was ten years old. The indecent acts included placing his tongue in her mouth, rubbing her vulva with his fingers, rubbing his penis against her vulva, penetrating her vulva with his finger, and placing her hand on his penis. The SCMCA received Charge I and its specifications on March 27, 2017, thirteen years after the alleged events occurred.

The sole issue on appeal to the ACCA was whether the statute of limitations had expired with respect to the six specifications alleged in Charge I. *McPherson*, 2020 CCA LEXIS 350, at \*2–3, 2020 WL 5798492, at \*1. The ACCA determined that the statute of limitations applicable to the alleged offenses is the version of Article 43(b)(1), UCMJ, that is codified at 10 U.S.C. § 843(b)(1) (Supp. IV 2016).[1] *McPherson*, 2020

---

[1] The version of Article 43(b), UCMJ, that is codified at 10 U.S.C. § 843(b) (Supp. IV 2016), provides in relevant part:

> Art. 43. Statute of limitations
>
> . . . .
>
> (b)(1) Except as otherwise provided in this section (article), a person charged with an offense is not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command.
>
> (2)(A) A person charged with having committed a child abuse offense against a child is liable to be tried by court-martial if the sworn charges and specifications are received during the life of the child or

3

CCA LEXIS 350, at *3, 2020 WL 5798492, at *1. This version [hereinafter the 2016 version of Article 43(b), UCMJ] includes amendments that Congress made to Article 43, UCMJ, on December 23, 2016, in § 5225 of the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114–328, 130 Stat. 2000, 2909–10 (2016) [hereinafter NDAA 2017]. The ACCA determined that no earlier version of the statute of limitations applied because § 5225(f) of the NDAA 2017 provides: "The amendments made by [this section] shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this subsection if the applicable limitation period has not yet expired." *Id.* § 5225(f), 2000 Stat. at 2910; *see McPherson*, 2020 CCA LEXIS 350, at *14–15, 2020 WL 5798492, at *6.

Under the 2016 version of Article 43(b)(1), UCMJ, the ACCA concluded that the applicable period of limitations for the specifications of indecent acts in violation of Article 134, UCMJ, is five years. *McPherson*, 2020 CCA LEXIS 350, at *3, 2020 WL 5798492, at *1. The ACCA reached this conclusion because the 2016 version of Article 43(b)(1), UCMJ, establishes five years as the default period of limitations. The

within ten years after the date on which the offense was committed, whichever provides a longer period, by an officer exercising summary court-martial jurisdiction with respect to that person.

(B) In subparagraph (A), the term "child abuse offense" means an act that involves abuse of a person who has not attained the age of 16 years and constitutes any of the following offenses:

(i) Any offense in violation of section 920, 920a, 920b, 920c, or 930 of this title (article 120, 120a, 120b, 120c, or 130), unless the offense is covered by subsection (a).

(ii) Maiming in violation of section 928a of this title (article 128a).

(iii) Aggravated assault, assault consummated by a battery, or assault with intent to commit specified offenses in violation of section 928 of this title (article 128).

(iv) Kidnapping in violation of section 925 of this title (article 125).

ACCA held that the longer period of limitations for a "child abuse offense" in Article 43(b)(2)(A), UCMJ, did not apply because the definition of "child abuse offense" in Article 43(b)(2)(B), UCMJ, does not include any offenses under Article 134, UCMJ. *Id*. at *12–13, 2020 WL 5798492, at *5. Consequently, because more than five years had run since 2004, the ACCA determined that the statute of limitations had expired. *Id.* at *3, 2020 WL 5798492, at *1.

In reaching this result, the ACCA recognized that Congress enacted additional legislation addressing Article 43, UCMJ, on December 12, 2017. *Id*. at *13, 2020 WL 5798492, at *5. Section 531(n)(2) of the National Defense Authorization Act for Fiscal Year 2018 provided: "With respect to offenses committed before [January 1, 2019] subsection (b)(2)(B) of section 843 . . . shall be applied as in effect on December 22, 2016." Pub. L. No. 115-91, § 531(n)(2), 131 Stat. 1283, 1387 (2017) [hereinafter NDAA 2018]. The version of Article 43(b)(2)(B), UCMJ, that was in effect on December 22, 2016, is codified at 10 U.S.C. § 843 (Supp. II 2014) [hereinafter the 2014 version of Article 43, UCMJ]. Under the 2014 version of Article 43, UCMJ, the statute of limitations would not have expired at the time the SCMCA authority received the charges. The 2014 version of Article 43(b)(2), UCMJ, provided that the period of "child abuse offense[s]" was "the life of the child" and, unlike the 2016 version of Article 43(b)(2), UCMJ, defined "child abuse offense[s]" to include "indecent acts in violation of section 934 of this title (article 134)." *Id.*

The ACCA, however, held that § 531(n)(2) could not affect the result of Appellee's case because the amendment took effect only as of December 11, 2017. *McPherson*, 2020 CCA LEXIS 350, at *27–28, 2020 WL 5798492, at *10. By that time, the ACCA reasoned, the period of limitations under the 2016 version of Article 43, UCMJ, had already run for Appellee. *Id.*, 2020 WL 5798492, at *10. The ACCA held that under the Supreme Court's decision in *Stogner v. California*, 539 U.S. 607, 632 (2003), a law passed in 2017 could not revive a prosecution previously barred by the 2016 version of Article 43(b)(1), UCMJ, without violating the constitutional prohibition against ex post facto laws. 2020 CCA LEXIS 350, *27–28, 2020 WL 5798492, at *10. In addition, the ACCA held that even though Appellee had not raised the statute of limitations

as a defense at trial, the military judge made a plain error by not calling that defense to his attention as required by Rule for Court-Martial (R.C.M.) 907(b)(2)(B). *Id.* at \*35–38, 2020 WL 5798492, at \*13–14.

### III. Standard of Review

The questions of which version of the statute of limitations applies to this case and whether the applicable statute of limitations has run are questions of law that we review de novo. *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008). Because we determine (for reasons explained below) that the applicable statute of limitations has expired, another standard of review also comes into play. In this case, as the ACCA recognized, Appellee did not raise the statute of limitations at trial and the military judge also did not advise Appellee that the statute of limitations provides a defense as required by R.C.M. 907(b)(2)(B). *McPherson*, 2020 CCA LEXIS 350, at \*35–38, 2020 WL 5798492, at \*13–14. In *United States v. Briggs*, 78 M.J. 289, 295 (C.A.A.F. 2019), this Court held that in such circumstances, we review the failure of the military judge to provide the required advice for plain error.[2] To establish plain error, Appellee must show "(1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Armstrong*, 77 M.J. 465, 469 (C.A.A.F. 2018) (internal quotation marks omitted) (citation omitted).

### IV. Discussion

On appeal, the Government makes five arguments for reversing the ACCA's decision that the 2016 version of Article 43(b)(1), UCMJ, bars the indecent acts specifications in this

---

[2] We recognize that *Briggs* is no longer precedent because this Court vacated that decision following a reversal and remand by the Supreme Court. *United States v. Briggs*, 81 M.J. 59 (C.A.A.F. 2021) (decision upon remand from *United States v. Briggs*, 141 S. Ct. 467 (2020)). However, because the Supreme Court's decision did not concern the standard of review, we continue to believe that this Court's reasoning in *Briggs* concerning the standard of review was correct. Both parties also agree on this point. Accordingly, we will apply the plain error standard in this case.

case. We consider all these arguments but ultimately determine that they lack merit and that the ACCA correctly decided this case.

## A. Applicable Version of Article 43, UCMJ

The Government first contends that the 2016 version of Article 43, UCMJ, does not apply to the indecent acts specifications in this case. Relying on *Toussie v. United States*, 397 U.S. 112, 115 (1970), and other precedents, the Government argues that an accused is generally subject to the statute of limitations in effect at the time of the offense. Accordingly, the Government asserts that the version of Article 43, UCMJ, that was in force in 2004 is the applicable statute of limitations for the indecent acts specifications. Under the 2004 version of Article 43, UCMJ, a court-martial can try a "child abuse offense" so long as "the sworn charges and specifications are received before the child attains the age of 25 years." 10 U.S.C. § 843(b)(2)(A) (Supp. III 2003). The 2004 version of Article 43(b)(2)(B), UCMJ—unlike the 2016 version—defines the term "child abuse offense" to include "an act that involves sexual or physical abuse of a person who has not attained the age of 16 years and constitutes . . . indecent acts or liberties with a child in violation of section 934 of this title (article 134)." *Id.* § 843(b)(2)(B)(v). Therefore, if the 2004 version of Article 43, UCMJ, were applicable to this case, the period of limitations would not have run for the indecent acts specifications because the named victim was only twenty-three years old when the SCMCA received the charges in 2017.

We cannot accept the Government's argument. As the ACCA correctly reasoned, the 2016 version of Article 43(b), UCMJ, applies in this case because § 5225(f) of the NDAA 2017 specifically provides that the amendments to Article 43, UCMJ, "shall apply to the prosecution of any offense committed *before* . . . the date of the enactment of this subsection if the applicable limitation period has not yet expired." § 5225(f), 130 Stat. at 2910 (emphasis added). The language " 'before, on, or after' the statute's enactment date" "indicate[s] *unambiguously* [Congress's] intention to apply specific provisions retroactively." *I.N.S. v. St. Cyr*, 533 U.S. 289, 318–19 (2001) (emphasis added). Accordingly, this specific statutory provision overcomes the presumption, described in *Toussie*, that the statute of limitations in effect

at the time of the offense controls. In *Toussie*, the Supreme Court recognized that "questions of limitations are fundamentally matters of legislative . . . decision" and that a statute of limitations may provide for a different result from the general rule. 397 U.S. at 121.

## B. The Effect of the 2016 Amendments

The Government next argues that the amendments that § 5225 of the NDAA 2017 made to the definition of "child abuse offense" in Article 43(b)(2)(B), UCMJ, were non-substantive and therefore did not retroactively shorten the period of limitations for the specifications of indecent acts in this case. The Government asserts that Congress revised the list merely to reflect numerous changes to the names, substance, and numbering of several punitive articles. The Government accordingly contends that the "conforming amendments described in Section 5225(d) only [were] meant to realign Article 43, UCMJ, with the structure and content of the punitive articles of the UCMJ as amended . . . going forward." In support of this argument, the Government emphasizes that Congress described the amendments in § 5225(d) of NDAA 2017 as "CONFORMING AMENDMENTS." § 5225(d), 130 Stat. at 2909–10. The Government also asserts that Congress had no conceivable reason to shorten the period of limitations for the offense of indecent acts with a child in violation of Article 134, UCMJ.

We disagree with the Government's argument because it conflicts with the plain language of the 2016 version of Article 43(b)(2)(B), UCMJ. As described above, the definition of "child abuse offense" in this provision does not include offenses under Article 134, UCMJ. And although § 5225(d) of the NDAA 2017 labeled the changes that it made to Article 43(b)(2)(B), UCMJ, as conforming amendments, the Supreme Court has made clear that "the heading of a section cannot limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 529 (1947); *see also Asociacion De Empleados Del Area Canalera v. Panama Canal Comm'n*, 329 F.3d 1235, 1240 n.3 (11th Cir. 2003) (concluding that "the . . . generalization that technical and conforming amendments never make substantive changes in the law is simply unwarranted" after reviewing applicable Supreme Court precedent).

In reaching this conclusion, we see no reason to doubt the Government's theory about what Congress was attempting to accomplish in revising the definition of "child abuse offense" in Article 43(b)(2)(B), UCMJ. As the Government argues, the NDAA 2017 made changes to various punitive articles, and Congress needed to amend the definition of "child abuse offense" to take account of these changes. But in listing new offenses in the definition of "child abuse offense," Congress may not have realized the importance of continuing to include offenses under Article 134, UCMJ, so that the definition of "child abuse offense" would continue to apply to indecent acts committed under the previous statutory scheme. If that is what happened, then Congress made a substantive oversight in drafting the statute. We can recognize that this kind of mistake in statutory drafting occurred, but we cannot take upon ourselves the task of rewriting Article 43(b)(2)(B), UCMJ, to make the definition of "child abuse offense" more inclusive. *See Logan v. United States*, 552 U.S. 23, 35 n.6 (2007) ("[E]nlargement of [a statute] by [a] court, so that what was omitted, presumably by inadvertence, may be included within its scope . . . transcends the judicial function." (alterations after first set of brackets in original) (internal quotation marks omitted) (citation omitted)). As the Supreme Court has explained, an "unintentional drafting gap" is insufficient to warrant judicial correction; correction is the province of Congress in cases where an admittedly "anomalous" result "may seem odd, but . . . is not absurd." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 565–66 (2005) (internal quotation marks omitted) (citation omitted); *see also Crooks*, 282 U.S. at 60 (explaining that when a legislature makes a substantive error concerning the actual effect of a new law, "the remedy lies with the lawmaking authority, and not with the courts").

In a lengthy footnote in its brief, the Government floats an alternative argument concerning the applicability of the 2016 version of Article 43, UCMJ. The Government asserts that "[a]n argument can be made that [the NDAA 2017] was not in effect during the pendency of Appellee's trial." To support this argument, the Government cites § 531(p) of the NDAA 2018, which states: "The amendments made by this section shall take effect immediately after the amendments made [to the

UCMJ in the NDAA 2017] take effect as provided for in section 5542 of th[e NDAA 2017]." § 531(p), 131 Stat. at 1388. The Government asserts: "Accordingly, it can be said that none of the provisions [in the NDAA 2017] took effect until January 1, 2019," the date that the President chose as the effective date for the NDAA 2017. *See* Exec. Order No. 13,825, 83 Fed. Reg. 9889, 9889–91 (Mar. 1, 2018).

We disagree. Although the drafters of § 531(p) of the NDAA 2018 may have believed that all the changes to the UCMJ in the NDAA 2017 would go into effect on a future date to be specified by the President, such a belief was incorrect. Section § 5542(a) of the NDAA 2017 provides: "*Except as otherwise provided* . . . the amendments made by this division shall take effect on the date designated by the President." § 5542(a), 130 Stat. at 2967 (emphasis added). Section 5542(a) thus contemplated exceptions, and § 5225(f) provided one such exception. Section 5225(f) made the amendments to Article 43(b)(2)(B) applicable "to the prosecution of any offense committed before, on, or after *the date of the enactment* of this subsection." (Emphasis added.) The date of enactment was December 23, 2016, and on that date the 2016 version of Article 43, UCMJ, barred prosecutions of the specifications at issue in this case.

## C. Meaning of "Constitutes"

The Government argues in the alternative that, even if the 2016 version of Article 43, UCMJ, applies to this case, the specifications at issue fall within the definition of "child abuse offense" in the 2016 version of Article 43(b)(2)(B), UCMJ. The 2016 version of Article 43(b)(2)(B), UCMJ, states in relevant part:

> [T]he term "child abuse offense" means an act that involves abuse of a person who has not attained the age of 16 years and *constitutes any of the following offenses*:
>
>> (i) Any offense in violation of section 920, 920a, 920b, 920c, or 930 of this title (article 120, 120a, 120b, 120c, or 130), unless the offense is covered by subsection (a).

10 U.S.C. § 843(b)(2)(B)(i) (Supp. IV 2016) (emphasis added). The Government acknowledges that Article 43(b)(2)(B),

UCMJ, does not include Article 134, UCMJ, in the list of covered offenses, but argues that this omission does not matter. The Government asserts that "Congress deliberately used the phrase, 'and constitutes any of the following offenses' instead of 'and charged under any of the following provisions.'" The Government contends that the indecent acts in the specifications at issue "constitute" child abuse offenses because, if committed today, they could be charged as sexual abuse of a child under Article 120b, UCMJ, 10 U.S.C. § 920b (2018), which is one of the offenses listed in Article 43(b)(2)(B), UCMJ.

We disagree with this interpretation of the 2016 version of Article 43(b)(2)(B), UCMJ. What we believe is most significant is that the statute uses the words "constitutes . . . any offense *in violation of*" the articles in the enumerated list instead of the words "*would* constitute" a violation of the articles in the enumerated list. Article 43(b)(2)(B)(i), UCMJ (emphasis added). The acts described in the specifications likely "would constitute" offenses under Article 120b, UCMJ, *if that Article had existed in 2004* and *if the charge sheet had informed Appellee that he was accused of violating that article*. But because a person cannot violate a statute that did not exist at the time of his acts, Appellee's acts cannot constitute *violations* of Article 120b, UCMJ, an article that did not exist in 2004. And the charge sheet accused Appellee of violating Article 134, UCMJ, an entirely different article. The acts alleged in the specifications are therefore not acts that constitute "child abuse offense[s]" within Congress's definition in the 2016 version of Article 43(b)(2)(B), UCMJ.

## D. Absurdity

The Government further argues that even if the 2016 version of Article 43(b), UCMJ, applies (as we have concluded), and even if the specifications do not allege child abuse offenses as defined in Article 43(b)(2)(B), UCMJ (as we also have concluded), we cannot enforce the article as written because the result would be absurd. We agree with the Government that in very limited circumstances, a court can refuse to apply the literal text of a statute when doing so would produce an absurd result. The Supreme Court has said that "a departure from the letter of the law" may be justified to avoid an absurd result if "the absurdity . . . is so gross as to

shock the general moral or common sense." *Crooks*, 282 U.S. at 60. We nonetheless do not think that the absurdity doctrine applies here.

A litigant who asks the court to apply the absurdity doctrine should explain in detail why following the plain meaning of a statute would produce absurd results. In its brief in this case, the Government has endeavored to meet this requirement with four distinct arguments. Upon inspection, however, Supreme Court precedent establishes that each of the Government's arguments is flawed.

First, the Government argues that the ACCA's interpretation of Article 43, UCMJ, is absurd because it "unwinds years of Congressional action focused on bringing those who molest children to justice." If by this statement the Government means that it is absurd for a statute of limitations to bar prosecution of a person who committed a heinous crime, we cannot accept this argument. All statutes of limitations prevent some perpetrators from being brought to justice. *See Pendergast v. United States*, 317 U.S. 412, 418 (1943) ("Every statute of limitations, of course, may permit a rogue to escape."). Statutes of limitations balance the need for enforcing laws on the merits against the need for repose and concerns about the staleness of evidence. *See Hardin v. Straub*, 490 U.S. 536, 542 n.10 (1989) (explaining that "the interest in prompt resolution of disputes is vindicated by all statutes of limitations and always must be balanced against the countervailing interest in allowing valid claims to be determined on their merits"). Accordingly, the mere fact that applying the plain meaning of the 2016 version of Article 43, UCMJ, prevents the prosecution of Appellee for the egregious offenses of which he is accused does not implicate the absurdity doctrine.

Second, the Government asserts that "[t]o the extent the legislation can be read to plainly subject Appellee's crime to a mere five-year limitation period, that result is bizarre and shocking to morals and common sense and should be avoided." If by this statement the Government means that the shortness of a five-year period of limitations for the offense of indecent acts against a child is inherently absurd, we also cannot accept this contention. A party's argument that the court should reject "a literal reading" of a statute "because it produces absurd results" fails if "Congress *could rationally*

*have* made such a" reading the law. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 84–85 (1991) (emphasis added); *see also Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 29–31 (1989) (a result is not "absurd or futile" if "it is not irrational" (internal quotation marks omitted) (citation omitted)). The Supreme Court reaffirmed this standard and made clear in two recent precedents that courts should not reject the plain meaning of a statute if "[a] rational Congress" *could have* intended that meaning. *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1484 (2021) (reasoning that "[a] rational Congress easily could have thought" the statute meant what the Court interpreted it to mean); *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021) (reasoning that "a rational Congress could have thought that [certain] considerations" supported the "clear statutory directive").

Accordingly, the question for absurdity purposes is not whether *the 114th Congress in fact* intended the five-year period of limitations when it enacted § 5225 of the NDAA 2017, but instead whether *a Congress could have* done so. In this case, we know that a rational Congress *could have* intended to enact a five-year period of limitations for Article 134, UCMJ, offenses because the 99th Congress did exactly that thirty-five years ago. In 1986, Congress rewrote Article 43(b)(1) to establish a general five-year period of limitations. National Defense Authorization Act for Fiscal Year 1987, Pub. L. No. 99-661, § 805(a), (b), 100 Stat. 3816, 3908 (1986) (codified at 10 U.S.C. § 843 (1988)). This five-year period remained in effect until 2003, when Congress for the first time created a longer period of limitations for child abuse offenses. National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, § 551, 117 Stat. 1392, 1481 (2003) (codified at 10 U.S.C. § 843(b)(2) (Supp. III 2003)). Between 1986 and 2003, this Court could not have properly held the five-year period of limitations to be inherently absurd. We therefore cannot properly hold that it is inherently absurd now.

In *Logan*, the Supreme Court used precisely this reasoning to hold that the absurdity doctrine did not apply. 552 U.S. at 36–37. In that case, the petitioner argued that a literal reading of a criminal statute would yield the absurd result that "less serious offenders will be subject to [the statute's]

enhanced penalties while more serious offenders in the same State . . . may escape heightened punishment." *Id.* at 32. Echoing its many prior pronouncements on the subject, the Supreme Court explained: "Statutory terms . . . may be interpreted against their literal meaning where the words *could not conceivably* have been intended to apply to the case at hand." *Id.* at 36 (emphasis added) (internal quotation marks omitted) (citations omitted). The Court then reasoned that the literal meaning could conceivably have been intended to apply to that case because a different Congress intended the same result. *Id.* at 36–37 (holding that "it can hardly be maintained that Congress could not have meant what it said" because "[i]t is more than 'conceivable' that the Legislature, albeit an earlier one, meant to do the same") (citation omitted).

Third, the Government asserts that "[a] conclusion that Congress increased the period of limitations for child abuse offenses, while simultaneously and drastically shortening the limitations period for the same malfeasance, would be absurd." We agree that internal inconsistency in legislation may be a ground for applying the absurdity doctrine. *See United States v. Turkette*, 452 U.S. 576, 580 (1981) (explaining that "absurd results are to be avoided and internal inconsistencies in the statute must be dealt with"). We also agree that, while eliminating offenses under Article 134, UCMJ, from the definition of "child abuse offense," § 5225 of the NDAA 2017 simultaneously increased the statute of limitations for child abuse offenses in one limited way. Under the 2016 version of Article 43(b)(2)(A), UCMJ, the time for receiving charges for child abuse offenses is any time "during the life of the child or within *ten years*" after the offense. (Emphasis added.) In the 2014 version of Article 43(b)(2)(A), UCMJ, the period was any time "during the life of the child or within *five years*" after the offense. 10 U.S.C. § 843(b)(2)(A) (Supp. II 2014) (emphasis added). But we do not agree that § 5225 of the NDAA in this way created an inconsistency. On the contrary, one change affected the length of the statute of limitations while another change affected the range of offenses covered by the statute of limitations. These changes are not in conflict because a court can enforce the plain meaning of each of them exactly as they are written. *See Turkette*, 452 U.S. at 585 (applying

the statute as written after determining that "[t]here is no inconsistency or anomaly").

Finally, quoting *Crooks*, 282 U.S. at 60, the Government argues that the ACCA's interpretation is absurd because "both the statute and legislative history contain sufficient evidence to 'make plain the intent of Congress that the letter of the statute is not to prevail.'" The Government argues that starting in 2003, Congress repeatedly passed laws expanding the period of limitations for child abuse offenses. Against this background, the Government contends, reading the amendments made by § 5225 of the NDAA 2017 to shorten the period limitations would be absurd. We disagree with this reasoning. The absurdity doctrine focuses on the *inherent* absurdity of the *results* of interpreting statutes according to their plain meaning. *See*, *e.g.*, *United States v. X-Citement Video*, 513 U.S. 64, 69 (1994) (disapproving interpreting statutes in a way that "would produce results that were not merely odd, but positively absurd"). What the Government is arguing here is that the likely legislative purpose should prevail over the plain meaning of a statute, even if the results of the plain meaning are not inherently absurd. The Supreme Court has repeatedly rejected this method of interpreting statutes. "[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

In addition to the weakness of the Government's arguments, at least three other considerations prevent us from applying the absurdity doctrine in this case. First, we agree with Appellee's argument that the Government's position conflicts with the doctrine of repose. Under the doctrine of repose, "criminal statutes of limitation are to be liberally interpreted in favor of repose." *United States v. Marion*, 404 U.S. 307, 322 n.14 (1971); *see also Lopez de Victoria*, 66 M.J. at 74 (applying the doctrine of repose to Article 43, UCMJ). Given that they are to be "liberally interpreted in favor of repose," statutes of limitations "ought not be extended by construction to embrace [crimes] not so denominated," as the Government counsels here. *United States v. Scharton*, 285 U.S. 518, 522 (1932). If courts must liberally construe ambiguous criminal statutes of limitations in favor of repose, we do not understand how it

could be absurd to construe them according to their plain text, when the plain text is also in favor of repose.[3]

Another consideration weighing against the Government's absurdity argument is that the Government is essentially asking an Article I court to disregard the plain meaning of the 2016 version of Article 43, UCMJ, to achieve a result that the Ex Post Facto Clause prevents Congress from accomplishing directly. As described above, Congress recognized the problem with the 2016 version of Article 43, UCMJ, and tried to correct it with § 531(n)(2) of the NDAA 2018. The ACCA properly concluded that § 531(n)(2) could not revive an expired period of limitations because to do so would be an unconstitutional violation of the Ex Post Facto Clause under *Stogner*. The Government has not cited any precedent suggesting that we can employ the absurdity doctrine to circumvent this bedrock constitutional limitation.

And a final consideration is that if this Court were to conclude that the plain meaning of the 2016 version of Article 43, UCMJ, is absurd, we would have to find a non-absurd and textually justified alternative reading of the provision. The Government has not presented us with anything of the kind. Its arguments about the meaning of the words "constitute" and the effective date of § 5225(a) do not suffice as we have explained above. And in any case, courts are not empowered to "repair such a congressional oversight or mistake" because, as noted above, "enlargement of [a statute] by [a] court, so that what was omitted, presumably by inadvertence, may be included within its scope . . . transcends the judicial function."

---

[3] One of the judges at the ACCA relied on the rule of lenity in ruling for Appellee. *McPherson*, 2020 CCA LEXIS 350, at *44, 2020 WL 5798492, at *16 (Salussolia, J., concurring in the result). Under the rule of lenity, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812 (1971). We doubt that the rule of lenity applies to the interpretation of statutes of limitations. But we agree that interpreting a statute of limitations contrary to its plain meaning so that it disadvantages the accused certainly seems to contradict the general thrust of the rule. *See United States v. Santos*, 553 U.S. 507, 514, (2008) (explaining that one purpose of the rule of lenity is to "place[] the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead").

*Logan*, 552 U.S. at 35 n.6 (alterations in original) (internal quotation marks omitted) (citation omitted). For all these reasons, we reject the Government's absurdity arguments.

## E. Plain Error

Finally, the Government argues that Appellee cannot prevail under the plain error standard of review. As discussed above, to establish plain error, Appellee must show "(1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Armstrong*, 77 M.J. at 469 (internal quotation marks omitted) (citation omitted).

Here we have found error. The statute of limitations barred prosecution of the six specifications of Charge I and the military judge did not inform Appellee that he had a defense as required by R.C.M. 907(b). The error is prejudicial because if the military judge had informed Appellee about the period of limitations, Appellee surely would have asserted the period of limitations as a defense. The key question is whether the error is clear and obvious. The Government asserts that we cannot find that the running of the statute of limitations is clear and obvious given all the steps required to reach the ACCA's judgment. We reject this assertion. The 2016 version of Article 43(b), UCMJ, clearly applied to this case because § 5225(f) plainly said that it did. Article 43(b)(1), UCMJ, clearly set a five-year period of limitations because the longer period in Article 43(b)(1)(B), UCMJ, plainly did not apply to offenses under Article 134, UCMJ. The only substantial disagreement was about whether courts should reject this plain meaning based on the absurdity doctrine. And as explained above, the Government's arguments for applying the absurdity doctrine conflicts with numerous Supreme Court precedents.

## V. Conclusion

We recognize that the result of applying the law as written by Congress requires dismissal of a charge and six specifications accusing Appellee of particularly egregious offenses. But the question before this Court is not whether Appellee *ought* to be triable for these offenses, but only whether he *can* be tried for them. In this case, for the reasons explained, the period of limitations that Congress established in the 2016 version of Article 43, UCMJ, 10 U.S.C. § 843 (Supp. IV 2016), has

expired. The certified question is answered in the negative. The judgment of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, with whom Judge SPARKS joins, dissenting.

The majority concludes that the National Defense Authorization Act for Fiscal Year 2017 (NDAA 2017)[1] amended Article 43 of the Uniform Code of Military Justice (UCMJ) in such a manner that Appellee's convictions for indecent acts with a child must now be vacated because his offenses were subject to a five-year statute of limitations rather than to the significantly longer statute of limitations applicable to child abuse offenses. They base this conclusion on the fact that the revised version of Article 43, UCMJ, did not explicitly list indecent acts with a child as one of the offenses constituting a child abuse offense. NDAA 2017, § 5225(d). I concede that the majority's literal reading of the statute is not without merit. After all, as Justice Kagan famously declared: "We're all textualists now."[2] However, I believe the majority's approach to this issue regrettably ignores long-standing Supreme Court precedent that, in rare and exceptional circumstances, a literal reading of a statute is not mandated when it is indisputably clear that Congress never intended that literal reading, and such a reading is so absurd and would lead to such an unjust result as to offend all moral or common sense.

I believe it is obvious that the language contained in NDAA 2017 was a product of poor draftsmanship in the course of a complicated series of revisions to Article 43 and was in no way reflective of an intent by Congress to dramatically reduce the statute of limitations for the offense of indecent acts with a child. I note that over many years Congress consistently increased rather than decreased the statute of

---

[1] Pub. L. 114-328, § 5225, 130 Stat. 2000, 2909 (2016).

[2] Harvard Law School, *The Scalia Lecture: A Dialogue with Justice Kagan on the Reading of Statutes*, YouTube (Nov. 25, 2017), https://www.youtube.com/watch?v=dpEtszFT0Tg&t=203s, at 8:28. Justice Kagan's Scalia Lecture took place on Nov. 17, 2015, and Harvard Law School subsequently posted a video recording of the event to its YouTube channel. *In Scalia Lecture, Kagan Discusses Statutory Interpretation*, Harvard Law Today (Nov. 25, 2015, http://today.law.harvard.edu/in-scalia-lecture-kagan-discusses-statutory-interpretation.

limitations for such abhorrent crimes and, during the legislative process involving NDAA 2017, there was no public indication whatsoever that even a single member of Congress sought to drastically alter this trajectory. Further, I am convinced that the majority's restrictive, literal interpretation of the statute leads to an absurd and unjust result that offends all moral and common sense because not only will Appellee's convictions for repeatedly sexually abusing his ten-year-old daughter now be vacated,[3] but in all other similarly situated pre-2017 cases where a servicemember committed indecent acts with a child and the victim did not report the criminal conduct within five years, military prosecutions will now need to be halted or court-martial convictions will now need to be vacated. *See United States v. Adams*, 80 M.J. 461 (C.A.A.F. 2020) (order granting review). And lamentably, there is nothing that Congress or the President can do to rectify this sweeping retroactive effect in pre-2017 cases.

Contrary to the majority, I would hold that the Government prosecuted Appellee in a timely manner and that the revisions made to Article 43 by NDAA 2017 do not compel this Court to vacate Appellee's convictions. Therefore, I would affirm Appellee's convictions on the six specifications of indecent acts with a child which are at issue here. Because the majority holds otherwise, I respectfully dissent.

## I. History of Article 43, UCMJ

In order to understand Article 43, UCMJ, as it currently exists, I find it instructive to survey the amendments Congress made to it over the years.

---

[3] As recounted by the United States Army Court of Criminal Appeals, between May and August 2004 at the family home at Fort Campbell, Kentucky, Appellee "placed his tongue inside [the child victim's] mouth while kissing her, rubbed her vulva with his fingers, placed her hand on his penis, and rubbed his penis against her vulva, all with the intent to gratify his sexual desires." *United States v. McPherson*, No. ARMY 20180214, 2020 CCA LEXIS 350, at *4, 2020 WL 5798492, at *2 (A. Ct. Crim. App. Sept. 28, 2020). Similarly, between August and December 2004 at the home of the victim's grandmother in Illinois, Appellee, "[o]n multiple occasions[,] . . . penetrated [the victim's] vulva with his finger and placed her hand on his penis." *Id*.

In 1986, Congress amended Article 43 by lengthening the statute of limitations applicable to most UCMJ offenses. National Defense Authorization Act for Fiscal Year 1987 (NDAA 1987), Pub. L. No. 99-661, § 805, 100 Stat. 3816, 3908 (1986); *see generally* Act of Aug. 10, 1956, ch. 1041, Pub. L. No. 84-1028, § 843, 70A Stat. 51. Specifically, this amendment expanded the statute of limitations from three years to five years for offenses committed on or after the enactment date of the statute. NDAA 1987, § 805(b)(1); *compare* 10 U.S.C. § 843 (1988), *with* 10 U.S.C. § 843 (1982). The only exceptions to this five-year window were for absence without leave in time of war, missing movement in time of war, and any offense punishable by death, all of which "may be tried and punished at any time without limitation." NDAA 1987, § 805(a).

In 2003, Congress again amended Article 43, this time by increasing the statute of limitations for "child abuse offense[s]" to the victim's twenty-fifth birthday. NDAA 2004, § 551. Congress defined "child abuse offense[s]" in part by providing an enumerated list of offenses, as identified by the section of the statute and article number. NDAA 2004, § 551(b)(2)(A). This list specifically included the offense of "indecent acts or liberties with a child in violation of section 934 of this title (article 134)" as a "child abuse offense." NDAA 2004, § 551(b)(2)(B)(v).

In 2006, Congress amended the statute yet again. National Defense Authorization Act for Fiscal Year 2006 (NDAA 2006), Pub. L. No. 109-163, § 553, 119 Stat. 3136, 3264 (2006). It increased the statute of limitations for child abuse offenses to "the life of the child or within five years after the date on which the offense was committed [whichever is longer]." NDAA 2006, § 553(b)(1). Indecent acts or liberties with a child continued to be listed as a child abuse offense. NDAA 2006, § 553(b)(2)(B)(v).

In 2012, Congress made additional amendments by changing the statute sections and the articles listed in Article 43 (b)(2), UCMJ, so that they would comport with changes it made elsewhere in the code. National Defense Authorization Act for Fiscal Year 2012 (NDAA 2012), Pub. L. No. 112-81, § 541(d)(1), 125 Stat. 1298, 1410 (2011). In the course of doing so, Congress added Articles 120a, 120b, and 120c, UCMJ, to the list of child abuse offenses. *Id.*

In 2013, Congress amended the statute once again by adding sexual assault and sexual assault of a child to the list of offenses that could be tried without limitation. National Defense Authorization Act for Fiscal Year 2014 (NDAA 2014), § 1703(a), Pub. L. No. 113-66, § 1703, 127 Stat. 672, 958 (2013). Therefore, until the time of the next amendments in 2017, Article 43(b)(2)(B)(i-v) read as follows:

> (B) In subparagraph (A), *the term 'child abuse offense' means* an act that involves abuse of a person who has not attained the age of 16 years and constitutes *any of the following offenses*:
>
>> (i) Any offense in violation of section 920, 920a, 920b, or 920c of this title (article 120, 120a, 120b, or 120c), unless the offense is covered by subsection (a).
>>
>> (ii) Maiming in violation of section 924 of this title (article 124).
>>
>> (iii) Forcible sodomy in violation of section 925 of this title (article 125).
>>
>> (iv) Aggravated assault or assault consummated by a battery in violation of section 928 of this title (article 128).
>>
>> (v) Kidnaping, assault with intent to commit murder, voluntary manslaughter, rape, or forcible sodomy, or *indecent acts in violation of section 934 of this title (article 134).*

(Emphasis added.)

Then, in 2016, Congress amended Article 43, UCMJ, once more, this time through amendments contained in NDAA 2017. These amendments became effective on December 23, 2016. Congress eliminated clauses (i) through (v) of subsection (b)(2)(B) and replaced them with new language. NDAA 2017, § 5225(d). The new sections read as follows:

> (B) In subparagraph (A), the term 'child abuse offense' means an act that involves abuse of a person who has not attained the age of 16 years and constitutes any of the following offenses:
>
>> (i) Any offense in violation of section 920, 920a, 920b, 920c, or 930 of this title (article 120, 120a, 120b, 120c, or 130), unless the offense is covered by subsection (a).

> (ii) Maiming in violation of section 928a of this title (article 128a).
>
> (iii) Aggravated assault, assault consummated by a battery, or assault with intent to commit specified offenses in violation of section 928 of this title (article 128).
>
> (iv) Kidnapping in violation of section 925 of this title (article 125).

*Id.*

As can be seen, the statute no longer specifically listed indecent acts with a child in violation of Article 134, UCMJ, as a child abuse offense. Further, the statute stated that its provisions "shall apply to the prosecution of any offense committed *before*, on, or after the date of the enactment of [§ 5225] if the applicable limitation period has not yet expired." NDAA 2017, § 5225(f) (emphasis added). In other words, Congress made these amendments retroactive.

## II. Analysis

Recently in *United States v. Briggs*—which notably was another case where the applicable statute of limitations under the UCMJ was at issue—the Supreme Court stated: "The question before us is important, and there are reasonable arguments on both sides." 141 S. Ct. 467, 469 (2020). In the course of reviewing de novo the issue before us, I note that the Supreme Court's observation in *Briggs* similarly holds true in the instant case.

### A. The Plain Language Approach to Interpreting NDAA 2017

Appellee's argument in this case is straightforward. Appellee begins by quoting the following pronouncement which the Supreme Court made just last term: "This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1749 (2020). Appellee then argues that because the language of the current version of Article 43 is plain, this Court is compelled to enforce the law exactly as it appears on the books.

Appellee's conclusion about the effect these latest amendments should have on his convictions is unsurprising. In sum, he argues that his prosecution for these offenses was time-

barred. Appellee's reasoning is as follows. First, the NDAA 2017 amendments apply to the indecent acts offenses with which he was charged because his court-martial was still pending on the date the amendments became effective, and Congress made these amendments retroactive. Second, the statute of limitations "catch-all" provision of Article 43, UCMJ—which provides for a five-year statute of limitations for all offenses that do not expressly carry a different limitation—applies in this case because indecent acts with a child is not one of the enumerated "child abuse offenses" in the applicable version of Article 43, UCMJ. And third, the statute of limitations was not tolled in a timely manner because the summary court-martial convening authority (SCMCA) did not receive the sworn charges until more than five years after the indecent acts occurred. Therefore, Appellee avers, the plain language of Article 43, UCMJ, compels this Court to vacate his convictions for indecent acts with a child.

Appellee's position seems amply supported by a number of recent Supreme Court precedents. In addition to *Bostock* quoted above, Appellee cites the following cases: *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (noting that it is a "basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written"); *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 942 (2017) ("The text is clear, so we need not consider . . . extra-textual evidence."); and *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) (stating that courts "may not narrow a provision's reach by inserting words Congress chose to omit") (citing *Virginia Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1900 (2019)). There are a host of other cases with similar holdings, such as *Garcia v. United States*, 469 U.S. 70, 75 (1984) (stating that where statutory language is clear, "judicial inquiry is complete") and *Richards v. United States*, 369 U.S. 1, 10 (1962) (courts "are bound to operate within the framework of the words chosen by Congress").

Appellee's position also seems fortified by certain important aspects of the NDAA 2017 amendments to Article 43, UCMJ. For example, Congress clearly spelled out in the new provisions eight separate sections of the United States Code (along with their congruent punitive articles under the UCMJ) that constitute the offense of child abuse. *See* NDAA

2017, § 5225(d). And yet, these same provisions make no mention of Article 134, UCMJ, offenses generally or of indecent acts specifically. Under the canon of construction denoted as *expressio unius est exclusio alterius* (that is, to express or include one thing implies the exclusion of the other) this absence of a reference to indecent acts indicates that those offenses are not included under the umbrella term of child abuse. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661 (2007). Only where a provision includes a residual clause or other language indicating that an enumerated list is nonexclusive should a court infer that Congress did not intend a list of this nature to be exhaustive. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). Congress included no such language in Article 43, UCMJ. And importantly, this Court is not generally at liberty to simply add to a list that Congress created. *See Lomax*, 140 S. Ct. at 1725.

## B. The Absurdity Doctrine

As can be seen, these pronouncements by various courts, as well as the canon of *expressio unius*, seemingly mandate the absolutist position that judges must unfailingly apply the plain language of a statute in all cases and in all circumstances no matter what. The majority certainly takes this view, refusing to "rewrit[e] Article 43(b)(2)(B), UCMJ, to make the definition of 'child abuse offense' more inclusive." To be clear, there is much to commend this viewpoint and I am loath to venture one syllable beyond the plain language of a statute. *See Bostock*, 140 S. Ct. at 1738 (describing how judges should defer to "the legislative process reserved for the people's representatives").[4]

---

[4]"[L]egislative history can never defeat unambiguous statutory text." *Bostock*, 140 S. Ct at 1750. That point is a given. However, in the instant case it seems to me that if Congress intended such a radical reduction in the statute of limitations pertaining to sexual offenses against children, we should expect to see at least *some* legislative history that would align with the majority's interpretation of the statute. *Cf. Terry v. United States*, 141 S. Ct. 1858, 1860–62 (2021) (discussing at length the history behind the retroactive modification of the First Step Act's statutory penalties).

However, this absolutist approach ignores the fact that the Supreme Court has long recognized the existence of a legal safety valve of sorts known as "the absurdity doctrine." Many different versions of this doctrine have circulated over the years in court opinions and in scholarly articles. However, I believe it can best be stated as follows: The absurdity doctrine is the legal principle that, in rare and exceptional circumstances, a literal reading of a statute is not mandated when it is indisputably clear that Congress never intended that literal reading, and such a reading is so absurd and would lead to such an unjust result as to offend all moral or common sense. *See Church of the Holy Trinity v. United States*, 143 U.S. 457, 459–60 (1892); *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 470–71 (1989) (Kennedy, J., concurring); *United States v. Lucero*, 989 F.3d 1088, 1098 (9th Cir. 2021); *United States v. Fitzgerald*, 906 F.3d 437, 455–56 (6th Cir. 2018) (Griffin, J., dissenting); *In re Taylor*, 737 F.3d 670, 681 (10th Cir. 2013); *Lubow v. United States Dep't of State*, 923 F. Supp. 2d 28, 37 (D.D.C. 2013).

The existence and purpose of the absurdity doctrine has been repeatedly acknowledged for more than a century. "[W]hen the statute's language is plain, the sole function of the courts—*at least where the disposition required by the text is not absurd*—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (emphasis added) (citations omitted). *See also United States v. Andrews*, 77 M.J. 393, 400 (C.A.A.F. 2018) ("the plain language of a statute will control *unless it leads to an absurd result*" (emphasis added) (quoting *United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013)); *United States v. Herrmann*, 76 M.J. 304, 308 (C.A.A.F. 2017) (observing that courts enforce statutes according to their terms, "*at least where the disposition required by the text is not absurd*" (emphasis added) (citation omitted)); *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930) ("*the letter of the statute is not to prevail*" if it runs contrary to the plain intent of Congress (emphasis added)). The doctrine, properly understood, is "an implementation of (rather than . . . an exception to) the ordinary meaning rule." William N. Eskridge Jr., *Interpreting Law* 72 (2016).

In analyzing this legal principle, I begin by noting that when the language of a statute is ambiguous rather than

plain, the absurdity doctrine does not come into play. *See* John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2444 (2003) (describing how the absurdity doctrine is only implicated when statutory language plainly compels a particular result). Rather, other canons of judicial interpretation apply in those circumstances. *See* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U.L. Rev. 109, 117–18 (2010) (describing the applicability of canons like the rule of lenity, the constitutional avoidance canon, and the *Charming Betsy* canon in situations where there are multiple, plausible interpretations of the statutory language).

Here, the amended language of Article 43, UCMJ, is, indeed, "plain." First, indecent acts with a child clearly is not one of the enumerated offenses in the statute that constitutes child abuse. Therefore, consistent with the principle of *expressio unius* as explained above, it is evident that the statute does not expressly provide for a statute of limitations for this offense that extends beyond the general five-year time limit. And second, § 5225(f) of NDAA 2017 clearly states that the amendments contained therein "shall apply to the prosecution of any offense committed *before*, on, or after the date of enactment of [§ 5225] if the applicable limitation period has not yet expired." (Emphasis added.) Therefore, I agree with the majority that it is inarguable that the plain language of the statute makes the amendments retroactive and that they apply to Appellee's court-martial which was still pending on the effective date of the amendments. *I.N.S. v. St. Cyr*, 533 U.S. 289, 318–19 & n.43 (2001) (holding that Congress's use of "before, on, or after" language "indicate[s] unambiguously its intention to apply specific provisions retroactively"), *superseded by statute on other grounds*, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 310 (codified at 8 U.S.C. §1252), *as recognized in Nasrallah v. Barr*, 140 S. Ct. 1683 (2020)); *United States v. Lopez de Victoria*, 66 M.J. 67, 72 (C.A.A.F. 2008) (recognizing that "Congress certainly possesses the constitutional authority to apply legislation retroactively"); *Jeudy v. Holder*, 768 F.3d 595, 601 (7th Cir. 2014) (noting that the temporal language of " 'before' . . . unmistakably indicates retroactivity").

I next underscore that Congress has the constitutional prerogative to pass legislation that courts may deem poorly

reasoned or ill-advised. Thus, judges are not empowered to ignore the plain language of a statute merely because they view the law as being unwise, illogical, or even harmful. Simply stated, the policy or legal concerns of unelected judges cannot be allowed to trump the legislative will of the people's representatives. Accordingly, if there is a basis to conclude that Congress intended the plain language of a statute or the effects of that plain language, judges must defer to Congress's legislative authority and must not invoke the absurdity doctrine. *See Crooks*, 282 U.S. at 60; *see also United States v. Cook*, 594 F.3d 883, 890–91 (D.C. Cir. 2010).

However, "[w]here the plain meaning of words used in a statute produces an unreasonable result, 'plainly at variance with the policy of the legislation as a whole,' [the Court] may follow the purpose of the statute rather than the literal words." *United States v. N.E. Rosenblum Truck Lines, Inc.*, 315 U.S. 50, 55–56 (1942) (citation omitted). In the instant case, Appellee has not demonstrated any basis to conclude that Congress did indeed *intend* for the NDAA 2017 amendments to reduce the statute of limitations for the offense of indecent acts with a child. Specifically, in seeking to address this point in his brief and at oral argument, Appellee has only managed to muster two unconvincing arguments in support of his position.

First, Appellee cites *Bostock* for the proposition that "criminal defendants should be able to 'rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration.'" 140 S. Ct. at 1749. Appellee then goes on to aver, "This justification alone provides a non-absurd reason why Congress may have reduced the statute of limitations." Although the concept of reasonable reliance is certainly an important factor that judges should consider in this context, Appellee's point is simply not responsive to the query at hand of whether Congress *intended* to write the NDAA 2017 amendments to Article 43, UCMJ, in such a manner as to cause the absurd result now at issue. To be sure, the Supreme Court has observed that a "principal benefit of statutes of limitations is that typically they provide clarity" and that "[f]or persons who know they may be under investigation, a known statute of limitations provides a date after which they may no longer fear arrest and trial." *Briggs*,

141 S. Ct. at 471. However, such observations are far less applicable here where Appellee was already prosecuted *and* convicted of these indecent acts with a child offenses. If anything Congress's amendments to Article 43, UCMJ, served to unsettle the expectations of *victims* because, if Appellee's arguments were adopted, what once was a timely prosecution would now be barred by the statute of limitations. *Cf. id.* (describing how "a clear deadline allows [sexual assault victims] to know by when they must make [the] choice" to "identify their attackers and press charges"). The majority, however, adopts Appellee's view and asserts that it is not absurd "for a statute of limitations to bar prosecution of a person who committed a heinous crime." That proposition is undeniably true. However, it is one thing to prospectively limit the temporal reach of a criminal statute and quite another thing to *retroactively shorten a* statute of limitations in such a manner that *prior convictions that were timely filed* based on the statute of limitations in effect at the time of the offense must now be overturned. It seems to me that this latter scenario, which obviously applies in the instant case, fits squarely within the ambit of the absurdity doctrine.

Second, Appellee cites *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 414 n.13 (2010), and *Artis v. District of Columbia*, 138 S. Ct. 594, 607–08 (2018), for the proposition that "Congress may well have accepted anomalies such as this one [pertaining to the statute of limitations] in the name of providing for a uniform system." However, Appellee fails to articulate in any manner how Congress's goal of providing for a uniform system of military justice demonstrates that it intended or "accepted" the anomalies presented here. For example, a literal reading of NDAA 2017 would cause the offense of indecent acts with a child to carry a much shorter statute of limitations than a simple assault consummated by a battery of a person who has not attained the age of sixteen years. *See* NDAA 2017, § 5225. That result is anomalous indeed, but there is no reason to believe that Congress intended or accepted it.

The majority, however, contends that "we know that a rational Congress *could have* intended to enact a five-year period of limitations for Article 134, UCMJ, offenses because the

99th Congress did exactly that thirty-five years ago." The majority's view is unobjectionable if the question is framed as follows: "Could a rational Congress impose a five-year statute of limitations for child abuse offenses?" The answer to that is certainly yes. However, I submit that a better way to frame the question is: "Would a rational Congress, without any debate, discussion, or explanation, drastically decrease the statute of limitations for child abuse offenses where it had both repeatedly and recently *increased* that limitations period and where that dramatic reduction in the limitations period would serve as a huge and unanticipated windfall benefitting child sex abusers who already had been convicted and sentenced for their crimes?" The answer to that question is no. Indeed, I believe that a statutory interpretation presuming such an act and intent of Congress would be absurd. *See Griffin v. Oceanic Contractors*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations *consistent with the legislative purpose* are available" (emphasis added)).

The position of the majority and Appellee is undermined by the nature of the multiple amendments that Congress has made over the decades to the statute of limitations applicable to indecent acts with a child. As noted above, in 1986, Congress *increased* the time limit for the Government to submit sworn charges to the SCMCA from three years to five years; in 2003, Congress *increased* the time limit from five years to the date of the victim's twenty-fifth birthday; and, in 2006, Congress *increased* the time limit from the victim's twenty-fifth birthday to the life of the victim. This repeated ratcheting *up* of the length of time during which the Government could pursue charges in cases involving indecent acts with a child provides no basis to conclude that, in 2016, Congress suddenly intended to drastically *reduce* the statute of limitations pertaining to those offenses. Quite the opposite is true. This is particularly so in light of the fact that a plain language reading of the NDAA 2017 amendments would cause the statute of limitations for the offense of indecent acts with a child to plummet drastically from as long as the *life* of the child victim to the comparatively meager time period of *just five years* from the date of the offense. *See* NDAA 2006, § 553.

Additionally, this series of amendments to Article 43, UCMJ, highlight how complex the act of legislating on this topic has become. Specifically, in NDAA 2012, Congress made conforming changes to the legislation; in NDAA 2014, Congress incorporated all of the changes made to Article 120-type offenses; and in NDAA 2017, Congress eliminated significant passages in the statute and replaced them with new language. This complicated situation provides a basis to conclude that the plain language included in the most recent amendments to Article 43 is more likely the product of a drafter's error rather than an intentional act of Congress.

Moreover—and importantly—if the criminal conduct Appellee perpetrated in 2004 occurred today, that conduct would now be charged under Article 120b, UCMJ, rather than under Article 134, UCMJ. *See Manual for Courts-Martial, United States* pt. IV, para. 45b.b.(4)(e) (2016 ed.); *Manual for Courts-Martial, United States* pt. IV para. 62.b.(3) (2019 ed.). And Article 120b, UCMJ, is one of the enumerated child abuse offenses under Article 43, UCMJ, that carries an expanded statute of limitations based on the life of the child victim or within ten years of the date the offense was committed, whichever is longer. In other words, based on the law as it stands today, and based on the law as it stood at the time Appellee committed his crimes against his young daughter, this prosecution would be deemed timely.[5] Thus, the majority's literal reading of the NDAA 2017 amendments to Article 43, UCMJ, would constitute an inexplicable and fleeting aberration from the repeated manifest intent of Congress that would be not only surprising but positively stunning. Thus, I conclude that this case is one of those exceptional circumstances where the application of the plain language as written would produce a result "demonstrably at odds with the intentions of its drafters." *Griffin*, 458 U.S. at 571.

Nevertheless, this conclusion in no way ends my analysis. There are other crucial strictures on a court's ability to invoke the absurdity doctrine beyond the fact that there is no basis to conclude that Congress intended the legislative result.

---

[5] For this reason, applying the absurdity doctrine in this case does not run afoul of the Ex Post Facto Clause.

Most important among them is that a plain language reading of the statute must be truly "*absurd.*" As the Supreme Court recently stated, a merely "odd" result does not rise to the level of an "absurd" result. *Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 139 S. Ct. 1507, 1513 (2019) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U. S. 546, 565 (2005)). Indeed, long ago the Supreme Court held that in order for the absurdity doctrine to apply to a case—"thereby "justify[ing] a departure from the letter of the law"—the absurdity "must be so gross as to shock the general moral or common sense." *Crooks*, 282 U.S. at 60; *see also W. Minn. Mun. Power Agency v. FERC*, 806 F.3d 588, 596 (D.C. Cir. 2015) (same). As the Fourth Circuit held in *Sigmon Coal Co. v. Apfel*, when the literal application of the statutory language "results in an outcome that can truly be characterized as absurd, *i.e.*, that is 'so gross as to shock the general moral or common sense,' . . . then we can look beyond an unambiguous statute and consult legislative history to divine its meaning." 226 F.3d 291, 304 (4th Cir. 2000) (citations omitted). *See also Leiba v. Holder*, 699 F.3d 346, 351 (4th Cir. 2012) (same).

As discussed below, I conclude that this level of absurdity has been reached in the instant case. Indeed, to echo the United States Court of Appeals for the District of Columbia Circuit in *Cook*, I am convinced that the plain language of the applicable version of Article 43, UCMJ, "creates 'an outcome so contrary to perceived social values that Congress could not have intended it.' " 594 F.3d at 891 (quoting *Landstar Express Am., Inc. v. FMC*, 569 F.3d 493, 498–99 (D.C. Cir. 2009)).

It is now universally recognized that child victims of sexual abuse are particularly vulnerable and susceptible to control and manipulation by their abusers. In many situations it may prove extraordinarily difficult if not impossible for child victims to promptly report instances of indecent acts committed upon them. This is especially true where, as here, the child victim is very young at the time of the offenses and the abuser is a parent. Therefore, I am convinced that it would "shock the general moral or common sense" to require, for example, a six-year-old child who was sexually abused by a parent in 2011 to report that sexual abuse by 2016 when the child was just eleven years of age in order for criminal charges

14

against that parent to be timely filed. And yet, that is the legal result adopted by the majority.

This unjust result is not hypothetical, as reflected in the facts of the instant case where a literal reading of the NDAA 2017 amendments will now result in this Court vacating Appellee's convictions involving six specifications of indecent acts with a child. Nor is it confined to this single case. For instance, this Court has another case pending before us where a literal reading of the NDAA 2017 amendments will presumably compel us to vacate an appellant's convictions for indecent liberties with a minor. *See United States v. Adams*, 80 M.J. 461 (C.A.A.F. 2020) (order granting review). And there may well be other pre-2017 cases in the pipeline involving indecent acts with a child or indecent liberties with a child where charges may never be able to be brought or where convictions may need to be vacated because of the position the majority takes today. This result clearly "creates 'an outcome so contrary to perceived social values that Congress could not have intended it.'" *Cook*, 594 F.3d at 891 (quoting *Landstar Express*, 569 F.3d at 498–99).

By any commonsense definition of the term, the very nature of the offense of indecent acts with a minor constitutes "child abuse." This point is highlighted by the indecent acts which Appellee repeatedly committed on his ten-year-old daughter where he "placed his tongue inside her mouth while kissing her, rubbed her vulva with his fingers, placed her hand on his penis, and rubbed his penis against her vulva, all with the intent to gratify his sexual desires," and "[o]n multiple occasions . . . penetrated her vulva with his finger and placed her hand on his penis." *McPherson*, 2020 CCA LEXIS 350, at *4, 2020 WL 5798492, at *2. This was "child abuse" in its vilest and clearest form.

Therefore, pursuant to my invocation of the absurdity doctrine, I would hold that despite the language contained in the NDAA 2017 amendments, the offense of indecent acts with a child constitutes a child abuse offense for statute of limitations purposes under Article 43, UCMJ. In the instant case where Appellee committed the offense of indecent acts with a child in 2004 by repeatedly sexually abusing his ten-year-old daughter, and where the SCMCA received the sworn charges

in 2017, the Government prosecuted Appellee in a timely manner.

### III. Conclusion

In closing, I emphasize that courts must always be mindful of the fundamental principle that the absurdity doctrine should be invoked only in the rarest of circumstances. *United States v. Mooney*, 77 M.J. 252, 257 n.4 (C.A.A.F. 2018) ("Regardless of how opaque the rationale for a statute might be, the plain language meaning must be enforced and is rebutted only in 'rare and exceptional circumstances.' " (quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 135 (1991)); *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 75 (1982) ("[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' " (citation omitted); *see also Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1054 (9th Cir. 2014) (noting that the Supreme Court rarely invokes absurdity doctrine to override unambiguous legislation). The act of disregarding or correcting the plain language of a statute is fraught with constitutional peril. Nonetheless, I conclude that this is the appropriate step in the instant case and I profoundly regret that the majority declined to so do. For that reason, I respectfully dissent.